**SEALED**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _24-cr-80074-Middlebrooks/Matthewman_

18 U.S.C. § 371
42 U.S.C. § 1320a-7b(b)(1)(A)
18 U.S.C. § 1956(h)
18 U.S.C. § 1957(a)
18 U.S.C. § 2
18 U.S.C. § 982(a)(1), (a)(7)

UNITED STATES OF AMERICA

vs.

JUSTIN BLAIR, and
TREVOR BLAIR,

Defendants.
_____/

FILED BY _____TM_____ D.C.

**Jun 18, 2024**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times material to this Indictment:

### The Medicare Program

1. The Medicare Program ("Medicare") was a federally funded program that provided free and below-cost health care benefits to individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare & Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2. Medicare was a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3. Medicare covered different types of benefits and was separated into different program "parts." Medicare "Part B" covered, among other things, medical services provided by physicians, medical clinics, laboratories, and other qualified health care providers, such as office visits, minor surgical procedures, and laboratory testing, that were medically necessary and ordered by licensed medical doctors or other qualified health care providers.

4. Medicare "providers" included independent clinical laboratories, physicians, DME companies, and other health care providers who provided items and services to beneficiaries. To bill Medicare, a provider was required to submit a Medicare Enrollment Application Form ("Provider Enrollment Application") to Medicare. The Provider Enrollment Application contained certifications that the provider was required to make before the provider could enroll with Medicare. Specifically, the Provider Enrollment Application required the provider to certify, among other things, that the provider would abide by the Medicare laws, regulations, and program instructions, including the Federal Anti-Kickback Statute, and that the provider would not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare.

5. A Medicare "provider number" was assigned to a provider upon approval of the provider's Medicare Enrollment Application. A health care provider that received a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries.

6. A Medicare claim was required to contain certain important information, including: (a) the beneficiary's name and Health Insurance Claim Number ("HICN"); (b) a description of the health care benefit, item, or service that was provided or supplied to the beneficiary; (c) the billing codes for the benefit, item, or service; (d) the date upon which the benefit, item, or service was provided or supplied to the beneficiary; (e) the name of the referring physician or other health care

2

provider; and (f) the referring provider's unique identifying number, known either as the Unique Physician Identification Number ("UPIN") or National Provider Identifier ("NPI"). The claim form could be submitted in hard copy or electronically.

7. When submitting claims to Medicare for reimbursement, providers were required to certify that: (1) the contents of the forms were true, correct, and complete; (2) the forms were prepared in compliance with the laws and regulations governing Medicare; and (3) the services that were purportedly provided, as set forth in the claims, were medically reasonable and necessary, provided as represented, and not procured through the payment of illegal kickbacks and bribes.

8. Medicare would only pay for items and services that were medically reasonable and necessary, eligible for reimbursement, and provided as represented. Medicare would not pay claims for items and services that were procured through the payment of illegal kickbacks and bribes.

### Part B Coverage and Regulations

9. CMS acted through fiscal agents called Medicare administrative contractors ("MACs"), which were statutory agents for CMS for Medicare Part B. The MACs were private entities that reviewed claims and made payments to providers for services rendered to beneficiaries. The MACs were responsible for processing Medicare claims arising within their assigned geographical area, including determining whether the claim was for a covered service.

10. Payments under Medicare Part B were often made directly to the health care provider rather than to the patient or beneficiary. For this to occur, the beneficiary would assign the right of payment to the health care provider. Once such an assignment took place, the health

care provider would assume the responsibility for submitting claims to, and receiving payments from, Medicare.

### Medicare Coverage for Genetic Testing

11. Cancer genetic ("CGx") testing used DNA sequencing to detect mutations in genes that could indicate a higher risk of developing certain types of cancers in the future. CGx testing was not a method of diagnosing whether an individual presently had cancer.

12. Cardiovascular genetic testing ("cardio testing" or "cardio tests") used DNA sequencing to detect mutations in genes that can indicate an increased risk of developing serious cardiovascular conditions in the future.

13. Medicare did not cover diagnostic testing that was "not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." 42 U.S.C. § 1395y(a)(1)(A). Except for certain statutory exceptions, Medicare did not cover "examinations performed for a purpose other than treatment or diagnosis of a specific illness, symptoms, complaint or injury." 42 C.F.R. § 411.15(a)(1). Among the statutory exceptions Medicare covered were cancer screening tests such as "screening mammography, colorectal cancer screening tests, screening pelvic exams, [and] prostate cancer screening tests." *Id.*

14. If diagnostic testing was necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member, Medicare imposed additional requirements before covering the testing. Title 42, Code of Federal Regulations, Section 410.32(a) provided, "All diagnostic x-ray tests, diagnostic Laboratory tests, and other diagnostic tests must be ordered by the physician who is treating the beneficiary, that is, the physician who furnishes a consultation or treats a beneficiary for a specific medical problem and who uses the results in the

management of the beneficiary's specific medical problem." *Id.* "Tests not ordered by the physician who is treating the beneficiary are not reasonable and necessary." *Id.*

### The Defendants, Related Entities, and Relevant Persons

15. P.I.C. Group 21, LLC ("PIC GROUP") was a limited liability company formed under the laws of Florida with a principal place of business in Palm Beach County, Florida. PIC GROUP held an account at Bank 1 ending in x2194 (the "PIC Group Account").

16. Laboratory 1 was a limited liability company formed under the laws of Texas with a principal place of business in Texas. Laboratory 1 was an independent clinical Laboratory enrolled with Medicare. Laboratory 1 was connected to multiple other laboratories enrolled with Medicare.

17. JB Global Marketing, LLC ("JB GLOBAL") was a limited liability company formed under the laws of Florida with a principal place of business in Palm Beach County, Florida. JB GLOBAL purported to be a marketing company and held an account at Bank 2 ending in x8669 (the "JB Global Account").

18. TTB Management & Consulting, LLC ("TTB MANAGEMENT") was a limited liability company formed under the laws of Florida with a principal place of business in Palm Beach County, Florida. TTB MANAGEMENT purported to be a marketing company and held an account at Bank 3 ending in x4826 (the "TTB Account").

19. Jeweler 1 was incorporated under the laws of Florida with a principal place of business in Miami-Dade County, Florida. Jeweler 1 was a jewelry store.

20. Defendant **JUSTIN BLAIR** was a resident of Palm Beach County, Florida, and was a beneficial owner of PIC GROUP, an owner of JB GLOBAL, and a signatory on the JB Global Account.

21. Defendant **TREVOR BLAIR** was a resident of Palm Beach County, Florida, and was a beneficial owner and the listed owner of PIC GROUP, an owner of TTB MANAGEMENT, and a signatory on the PIC Group Account and the TTB Account.

22. Individual 1 was a resident of Palm Beach County, Florida, and was a partner in PIC GROUP.

23. Individual 2 was a resident of Palm Beach County, Florida, and an employee of PIC GROUP.

## COUNT 1
### Conspiracy to Defraud the United States and to Receive Health Care Kickbacks
### (18 U.S.C. § 371)

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around August 2021, and continuing through in or around March 2022, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

**JUSTIN BLAIR and
TREVOR BLAIR,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other, Individual 1, Individual 2, and with others known and unknown to the Grand Jury, to commit offenses against the United States, that is:

a. to defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of HHS and CMS in their administration and oversight of Medicare; and

b. to violate Title 42, United States Code, Section 1320a-7b(b)(1)(A), by knowingly and willfully soliciting and receiving any remuneration, including kickbacks and bribes, directly and

6

indirectly, overtly and covertly, in cash and in kind, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item or service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare.

### Purpose of the Conspiracy

3. It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (a) soliciting and receiving kickbacks and bribes in exchange for the referral of Medicare beneficiaries and doctors' orders for genetic testing to Laboratory 1 and other laboratories; (b) submitting and causing the submission of claims to Medicare through Laboratory 1 and other laboratories for genetic testing orders that were procured through kickbacks and bribes; (c) concealing and causing the concealment of kickbacks and bribes; and (d) diverting kickback and bribe proceeds for their personal use and benefit, the use and benefit of others, and to further the conspiracy.

### Manner and Means

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things, the following:

4. **JUSTIN BLAIR, TREVOR BLAIR**, Individual 1, Individual 2, and others formed PIC GROUP to circumvent a federal investigation after federal agents executed a search of another company where the defendants and their co-conspirators operated a call center that solicited Medicare beneficiaries to accept medically unnecessary genetic tests that were ultimately billed to Medicare.

5. **TREVOR BLAIR** listed himself as the sole member of PIC GROUP on documentation filed with the State of Florida to conceal the involvement of **JUSTIN BLAIR**, Individual 1, and Individual 2.

7

6. **JUSTIN BLAIR, TREVOR BLAIR,** Individual 1, Individual 2, and others caused PIC GROUP to: (1) conduct deceptive telemarketing calls that targeted Medicare beneficiaries for genetic testing; (2) create pre-populated genetic testing requisition forms, and (3) obtain signed doctors' orders by falsely claiming and implying that PIC GROUP was treating patients and that patients requested the tests.

7. **JUSTIN BLAIR, TREVOR BLAIR,** Individual 1, Individual 2, and others solicited and received kickbacks and bribes from Laboratory 1 and other laboratories in exchange for recruiting and referring Medicare beneficiaries, with completed doctors' orders, for genetic testing, knowing that the laboratories would bill Medicare for genetic testing purportedly provided to the recruited beneficiaries. For example, Laboratory 1 paid PIC GROUP approximately $1,500 for each referral of a beneficiary with a completed doctor's order for cardio genetic testing.

8. **JUSTIN BLAIR, TREVOR BLAIR,** Individual 1, Individual 2, and others concealed and disguised the nature and source of these kickbacks and bribes through sham contracts and agreements, including by describing them as payments for purportedly legitimate services, such as "specialized marketing and business development strategies."

9. **JUSTIN BLAIR, TREVOR BLAIR,** Individual 1, Individual 2, and others caused Laboratory 1 and other laboratories to submit more than $3.5 million in claims to Medicare for genetic testing orders that were procured through the payment of kickbacks and bribes. Medicare made payments on these claims to Laboratory 1 and other laboratories.

10. Laboratory 1 and other laboratories paid PIC GROUP approximately $2,515,000 in kickbacks and bribes as part of this referral scheme.

11. **JUSTIN BLAIR, TREVOR BLAIR,** Individual 1, Individual 2, and others used the kickback payments and proceeds of the conspiracy to benefit themselves and others, and to further the conspiracy.

## Overt Acts

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one co-conspirator committed and caused to be committed, in the Southern District of Florida, at least one of the following overt acts, among others:

1. On or about August 14, 2021, **TREVOR BLAIR** executed a signature card related to the PIC Group Account listing **TREVOR BLAIR** and Individual 2 as signatories on the account.

2. On or about August 16, 2021, **TREVOR BLAIR** formed PIC GROUP, listing himself as the sole member of the company on documentation filed with the State of Florida to conceal the involvement of **JUSTIN BLAIR,** Individual 1, and Individual 2.

3. On or about September 8, 2021, **TREVOR BLAIR** executed a Marketing Business Service Agreement between PIC GROUP and Laboratory 1, which falsely represented that PIC GROUP would provide "specialized marketing and business development strategies" for a purported flat rate of $5,000,000 annually.

4. On or about September 16, 2021, Laboratory 1 sent **TREVOR BLAIR** and **JUSTIN BLAIR,** through PIC GROUP, a kickback and bribe in the form of an electronic transfer of approximately $261,000 from Laboratory 1 to the PIC Group Account.

5. On or about November 16, 2021, Laboratory 1 sent **TREVOR BLAIR** and **JUSTIN BLAIR,** through PIC GROUP, a kickback and bribe in the form of an electronic transfer of approximately $244,500 from Laboratory 1 to the PIC Group Account.

9

6. On or about November 17, 2021, **TREVOR BLAIR** transferred kickback payments and fraud proceeds from Laboratory 1 to **JUSTIN BLAIR**, in the form of an electronic transfer of approximately $39,500 from the PIC Group Account to the JB Global Account.

7. On or about February 16, 2022, Laboratory 1 sent **TREVOR BLAIR** and **JUSTIN BLAIR**, through PIC GROUP, a kickback and bribe in the form of an electronic transfer of approximately $150,000 from Laboratory 1 to the PIC Group Account.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 2–4
### Solicitation and Receipt of Kickbacks in Connection with a Federal Health Care Program
### (42 U.S.C. § 1320a-7b(b)(1)(A))

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2. On or about the dates set forth below as to each count, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

**JUSTIN BLAIR and**
**TREVOR BLAIR,**

did knowingly and willfully solicit and receive remuneration, that is, kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, as set forth below, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare:

| Count | Approx. Date of Kickback Payment | Approx. Amt. of Kickback Payment | Description of Kickback Payment |
|---|---|---|---|
| 2 | 9/16/2021 | $261,000 | Wire transfer from Laboratory 1 to the PIC Group Account |
| 3 | 11/16/2021 | $244,500 | Wire transfer from Laboratory 1 to the PIC Group Account |

| Count | Approx. Date of Kickback Payment | Approx. Amt. of Kickback Payment | Description of Kickback Payment |
|---|---|---|---|
| 4 | 2/16/2022 | $150,000 | Wire transfer from Laboratory 1 to the PIC Group Account |

In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A) and Title 18, United States Code, Section 2.

## COUNT 5
### Conspiracy to Commit Money Laundering
### (18 U.S.C. § 1956(h))

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around August 2021, and continuing through in or around March 2022, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

**JUSTIN BLAIR and
TREVOR BLAIR,**

did knowingly and voluntarily combine, conspire, confederate, and agree with each other, Individual 1, and others known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1957, that is, to knowingly engage in a monetary transaction by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, knowing that the property involved in the monetary transaction was derived from some form of unlawful activity, in violation of Title 18, United States Code, Section 1957(a).

It is further alleged that the specified unlawful activity is conspiracy to receive health care kickbacks, in violation of Title 18, United States Code, Section 371; and receipt of kickbacks in connection with a Federal health care program, in violation of Title 42, United States Code, 1320a-7b(b)(1)(A).

11

All in violation of Title 18, United States Code, Section 1956(h).

### COUNTS 6–7
### Money Laundering
### (18 U.S.C. § 1957(a))

1.  The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.  On or about the dates specified below as to each count, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

**JUSTIN BLAIR and
TREVOR BLAIR,**

as identified in each count below, did knowingly engage and attempt to engage in a monetary transaction by, through, and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, knowing that the property involved in the monetary transaction was derived from some form of unlawful activity:

| Count | Defendant | Approx. Date of Transaction | Description of Monetary Transaction |
|---|---|---|---|
| 6 | TREVOR BLAIR | 11/19/2021 | Purchase of a gold chain from Jeweler 1 for approximately $12,500. |
| 7 | JUSTIN BLAIR | 11/19/2021 | Purchase of a gold chain from Jeweler 1 for approximately $12,500. |

It is further alleged that the specified unlawful activity is conspiracy to receive health care kickbacks, in violation of Title 18, United States Code, Section 371; and receipt of kickbacks in connection with a Federal health care program, in violation of Title 42, United States Code, 1320a-7b(b)(1)(A).

In violation of Title 18, United States Code, Sections 1957(a) and 2.

12

## FORFEITURE ALLEGATIONS

1. The allegations of this Indictment are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of certain property in which any of the defendants, **JUSTIN BLAIR** and **TREVOR BLAIR**, have an interest.

2. Upon conviction of a violation, or conspiracy to commit a violation, of Title 42, United States Code, Section 1320a-7b, as alleged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7).

3. Upon conviction of a violation of Title 18, United States Code, Sections 1956 and/or 1957, as alleged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

4. If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to the forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Sections 982(a)(1), 982(a)(7), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

_____
GRAND JURY FOREPERSON

_____
MARKENZY LAPOINTE
UNITED STATES ATTORNEY

GLENN S. LEON, CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

_____
OWEN DUNN
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO.: _____

v.

JUSTIN BLAIR and
TREVOR BLAIR,

**CERTIFICATE OF TRIAL ATTORNEY**

_____/
Defendants.

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of new counts _____

**Court Division** (select one)
☐ Miami   ☐ Key West   ☐ FTP
☐ FTL     ☒ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.
3. Interpreter: (Yes or No) No
   List language and/or dialect: _____
4. This case will take __10__ days for the parties to try.
5. Please check appropriate category and type of offense listed below:

   (Check only one)                    (Check only one)
   I    ☐ 0 to 5 days                  ☐ Petty
   II   ☒ 6 to 10 days                 ☐ Minor
   III  ☐ 11 to 20 days                ☐ Misdemeanor
   IV   ☐ 21 to 60 days                ☒ Felony
   V    ☐ 61 days and over

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Magistrate Case No. _____
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) Yes
   If yes, Judge Leibowitz _____ Case No. 22-CR-80022
9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No
15. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No
16. Did this matter involve the participation of or consultation with now Magistrate Judge Marta Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No

By: _____
OWEN DUNN
DOJ Trial Attorney
Court ID No.   A5503217

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:** JUSTIN BLAIR

**Case No:** _____

**Count #:** 1

Title 18, United States Code, Section 371

Conspiracy to Defraud the United States and to Receive Health Care Kickbacks
* Max. Term of Imprisonment: 5 years
* Mandatory Min. Term of Imprisonment (if applicable): N/A
* Max. Supervised Release: 3 years
* Max. Fine: $250,000 or twice the gross gain or loss resulting from the offense

**Counts #:** 2 – 4

Title 42, United States Code, Section 1320a-7b(b)(1)(A)

Solicitation and Receipt of Kickbacks in Connection with a Federal Health Care Program
* Max. Term of Imprisonment: 10 years as to each count
* Mandatory Min. Term of Imprisonment (if applicable): N/A
* Max. Supervised Release: 3 years
* Max. Fine: $250,000 or twice the gross gain or loss resulting from the offense

**Count #:** 5

Title 18, United States Code, Section 1956(h)

Conspiracy to Commit Money Laundering
* Max. Term of Imprisonment: 10 years
* Mandatory Min. Term of Imprisonment (if applicable): N/A
* Max. Supervised Release: 3 years
* Max. Fine: $500,000 or twice the value of the property involved in the transaction

*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: _____ JUSTIN BLAIR _____

Case No: _____

Counts #:   7

Title 18, United States Code, Section 1957(a)

Money Laundering
* Max. Term of Imprisonment:    10 years
* Mandatory Min. Term of Imprisonment (if applicable):   N/A
* Max. Supervised Release:   3 years
* Max. Fine:   $500,000 or twice the value of the property involved in the transaction

*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** TREVOR BLAIR

**Case No:** _____

**Count #:** 1

Title 18, United States Code, Section 371

Conspiracy to Defraud the United States and to Receive Health Care Kickbacks
* Max. Term of Imprisonment:    5 years
* Mandatory Min. Term of Imprisonment (if applicable):   N/A
* Max. Supervised Release:   3 years
* Max. Fine:   $250,000 or twice the gross gain or loss resulting from the offense

**Counts #:** 2 – 4

Title 42, United States Code, Section 1320a-7b(b)(1)(A)

Solicitation and Receipt of Kickbacks in Connection with a Federal Health Care Program
* Max. Term of Imprisonment:    10 years as to each count
* Mandatory Min. Term of Imprisonment (if applicable):    N/A
* Max. Supervised Release:   3 years
* Max. Fine:   $250,000 or twice the gross gain or loss resulting from the offense

**Count #:** 5

Title 18, United States Code, Section 1956(h)

Conspiracy to Commit Money Laundering
* Max. Term of Imprisonment:    10 years
* Mandatory Min. Term of Imprisonment (if applicable):    N/A
* Max. Supervised Release:   3 years
* Max. Fine:   $500,000 or twice the value of the property involved in the transaction

*Refers only to possible term of incarceration, supervised release and fines.  It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** _____ **TREVOR BLAIR** _____

Case No: _____

Counts #:   6

Title 18, United States Code, Section 1957(a)

Money Laundering
* Max. Term of Imprisonment:   10 years
* Mandatory Min. Term of Imprisonment (if applicable):   N/A
* Max. Supervised Release:   3 years
* Max. Fine:   $500,000 or twice the value of the property involved in the transaction

*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.